### ROMA et al. v. UNITED STATES.
### No. 4568.

Circuit Court of Appeals, Seventh Circuit.
Nov. 25, 1931.

1008

It seems that on May 12, 1930, a large number of sacks of bottled whisky were seized in a freight car by government officers. A libel was filed May 14 asking forfeiture of the property to the United States. May 16 the United States marshal attached the sacks of whisky and caused them to be placed in a warehouse of the United States at Chicago, and on July 31 an order was entered for forfeiture of the whisky to the United States. On the night of June 29 there was a burglary of the warehouse and 634 of the sacks of whisky were stolen therefrom. On the evening of the day following the burglary, 99 of the sacks of whisky were found in a garage back of premises known as Roma Inn, located outside of and near the southwestern limits of Chicago.

The first question raised is whether the stolen whisky was "property of the United States" within the purview of section 48 of the Criminal Code, 18 U. S. C. § 101 (18 USCA § 101).[1]

Appellants rely on Patmore v. United States (C. C. A.) 1 F.(2d) 8, where it was held that property seized by federal officers under the National Prohibition Act (27 USCA) was not property of the United States within the meaning of this statute. We feel constrained to say that we are not in accord with this holding, but are of opinion that property so seized is, as against a burglar or robber who forcibly takes it from the officers of the government, sufficiently property of the United States to justify the invocation of this statute.

But here the whisky had been taken by the government officials, and a libel for its forfeiture duly filed, under which it was attached by the United States marshal and by him placed in a warehouse of the United States, from which it was stolen.

In United States v. Stowell, 133 U. S. 1, 10 S. Ct. 244, 247, 33 L. Ed. 555, it was said: "By the settled doctrine of this court, whenever a statute enacts that upon the commission of a certain act specific property used in or connected with that act shall be forfeited, the forfeiture takes effect immediately upon

Leo Klein, William F. Waugh, and J. J. Goshkin, all of Chicago, Ill., for appellants.

George E. Q. Johnson, U. S. Atty., Thomas Dodd Healy, and Owen A. West, Asst. U. S. Attys., all of Chicago, Ill., for the United States.

Before ALSCHULER and SPARKS, Circuit Judges, and WOODWARD, District Judge.

ALSCHULER, Circuit Judge.

Under an indictment of eight counts appellants were convicted and sentenced on the seventh alone, which charged them with willfully, etc., receiving and concealing, and aiding in concealing, and having and retaining in their possession, with intent to convert to their own use and gain, certain property of the United States which theretofore, to their knowledge, had been embezzled, stolen, and purloined by another person; the property consisting of 99 sacks of bottles of whisky.

[1] "Receiving stolen public property. Whoever shall receive, conceal, or aid in concealing, or shall have or retain in his possession with intent to convert to his own use or gain, any money, property, record, voucher, or valuable thing whatever, of the moneys, goods, chattels, records, or property of the United States, which has theretofore been embezzled, stolen, or purloined by any other person, knowing the same to have been so embezzled, stolen, or purloined, shall be fined not more than $5,000, or imprisoned not more than five years, or both; and such person may be tried either before or after the conviction of the principal offender."

the commission of the act; the right to the property then vests in the United States, although their title is not perfected until judicial condemnation; the forfeiture constitutes a statutory transfer of the right to the United States at the time the offense is committed; and the condemnation, when obtained, relates back to that time, and avoids all intermediate sales and alienations, even to purchasers in good faith."

It is true the Stowell Case involved a question of lien; but we see no reason why the principle announced does not apply in a criminal case. There is here further analogy in the fact that the judgment of condemnation, whereby the right to the whisky definitely passed to the United States, was made July 31, 1930, before the indictment herein was returned. If, as in the Stowell Case, the judgment of forfeiture related back to the time of seizure of the whisky, the government's absolute property in the whisky began with the original seizure, even if such degree of ownership were deemed to be necessary.[2]

It is next contended that the record fails to show that appellants received, concealed, or possessed the stolen whisky, or aided therein, or that they knew it had been stolen or otherwise improperly taken from the government.

The officers found the 99 sacks in the garage back of Roma Inn and went into the Inn, where they questioned appellants. Roma and a woman claimed to be his wife were sitting in the restaurant; and Brown, who was then and for some time theretofore had been acting as bartender or waiter, at first denied that Roma was there. Roma, on inquiry by the officers, gave a false name, and denied ownership of the inn and all knowledge of the whisky. He was taken away in custody. Officers talking with Brown testified that Brown stated he kept his car in the garage, and, in substance, that he knew the whisky was there, and that he had told Roma he was crazy to leave it there. The officers said Brown asked them to forget about the business, and told them they could have $10,000 the next day if they would drop the matter.

Testimony for the government further elicited that although Roma had been running the place he had disposed of it several days before the time of this burglary; and, indeed, it appears that another, by the name of King or Kane, was in possession of the

place. This was testified to by the landlady of the property, called by the government, and it appears that King had some sort of license to run the place. There was no evidence offered for appellants, and it seems fairly established that Roma was not at the time of the burglary running the inn. Brown was quite voluble, and the officers testified that he was under the influence of liquor found at the inn and drunk by him in their presence. What he said, and his connection with the place, afforded sufficient evidence upon which the jury could have found him guilty of having had some part in the receipt and concealment of the whisky, knowing it to have been stolen by some other person.

While Brown's statement concerning Roma, in connection with the other circumstances, was sufficient to warrant the verdict against Brown, the statement of Brown, made in Roma's absence, was not competent against Roma; and, subtracting the statement of Brown from the case against Roma, practically nothing remains in the evidence to implicate Roma, beyond the fact that an indefinite number of days prior to the burglary he had operated the inn, that he was eating at the inn with his wife when, on the evening after the burglary, the officers came there, and that upon inquiry he gave an assumed name. These facts alone are scarcely sufficient to raise a suspicion of his guilt of the charge on which he was convicted.

For lack of incriminating evidence the judgment against Roma is reversed and the cause as to him remanded for another trial.

The judgment against Brown is affirmed.

[2] See, also, Henderson's Distilled Spirits, 14 Wall. 44, 57, 20 L. Ed. 815; Thacher's Distilled Spirits, 103 U. S. 679, 26 L. Ed. 535; The Kathryn, 50 F.(2d) 193 (D. C. N. Y.).