**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Robert D. CHILCOTE,
Defendant-Appellant.**

**No. 81–5813.**

United States Court of Appeals,
Eleventh Circuit.

Feb. 13, 1984.

Lawrence Rosen, Rosen & Rosen, P.A., Miami, Fla., for Chilcote.

Stanley Marcus, U.S. Atty., Nancy Worthington and Linda Collins Hertz, Asst. U.S. Attys., Miami, Fla., for U.S.

Before VANCE and JOHNSON, Circuit Judges, and PITTMAN *, District Judge.

JOHNSON, Circuit Judge:

Appellant, Robert D. Chilcote, challenges his conviction on charges of conspiracy to possess with intent to distribute cocaine, possession with intent to distribute cocaine and distribution of cocaine in violation of 21 U.S.C.A. §§ 846, 841(a)(1) and 18 U.S.C.A. § 2. Appellant also challenges his conviction, in a separate trial, on charges of assaulting a federal agent with a dangerous weapon, in violation of 18 U.S.C.A. § 111, and knowingly and unlawfully using a firearm during the commission of a felony, in violation of 18 U.S.C.A. § 924(c)(1). We affirm all convictions.

## I.

Appellant, with co-defendants Steven Ross and Alvaro Robert, picked up co-defendant Donald Lewington at the Miami International Airport after Lewington met with undercover DEA and Canadian police agents to arrange for the sale of 10 kilograms of cocaine. Appellant, Ross, Robert and Lewington then drove to Robert's home, where according to plan they later met with two undercover agents to discuss further the drug deal arranged in the morning meeting at the airport. At this later meeting, appellant participated in the negotiations over the terms of payment for the cocaine.

Appellant also participated in the testing and weighing of the cocaine that was the subject of the negotiations. Appellant, Robert and DEA agent Matthews together went to the master bathroom in Robert's home to conduct the tests. Appellant provided agent Matthews with counterbalance weights to use in measuring the cocaine. Appellant took some of the cocaine out of its package, chopped it up and placed it under a microscope for Matthews' observation. Appellant later assisted Robert in repackaging the cocaine.

When the testing was completed, agent Matthews used the telephone in the master bedroom to call a waiting team of arrest officers, posing as money men, to come to the house. Appellant, Matthews and Robert then went back downstairs to join Lewington and the other undercover agent. Before the arrest team arrived, appellant again went upstairs.

When the undercover money couriers arrived, agent Matthews too went upstairs, with his gun drawn. Hearing what he believed to be the cocking or loading of an automatic pistol and seeing that the door to the master bedroom was open, he proceeded to the doorway and looked inside. Mat-

thews saw appellant standing at an angle relative to the doorway, with his back and side facing Matthews, and leaning over a large black automatic weapon. Matthews pointed his gun at appellant and called out, "Police. Hold it. Hold it." Appellant swung around with the pistol in his hand. Matthews fired one round from his gun while jumping out of the doorway. His fire hit appellant in the upper arm and chest. A subsequent examination of appellant's gun revealed that it was loaded.

In this appeal, appellant challenges (1) the admission of evidence that he flew a DC–3 to Colombia, (2) the admission of co-defendant Lewington's guilty plea, (3) and his thirty-year-old fraud conviction, (4) the sufficiency of Count V of the indictment, and (5) the sufficiency of the evidence on the charge of assaulting a federal officer.

## II.

When appellant and agent Matthews were engaged in weighing and analyzing the cocaine, they had a conversation in which Matthews asked appellant whether he was a pilot. Appellant replied that he was not a pilot, but that he had once flown a DC–3 to Colombia and back. This statement was admitted into evidence, and appellant now challenges the admission as error.

Appellant argues that the statement was inadmissible extrinsic act evidence under Federal Rule of Evidence 404(b). The statement gives no indication of the purpose of the flight to Colombia and therefore, appellant maintains, it cannot be determined whether the evidence is relevant to the issue of his intent with regard to the charged crime. Thus, appellant argues, it is inadmissible under Rule 404(b).

The government argues that appellant's statement is not extrinsic act evidence, but rather is part of the res gestae. It is part of the story of the crime charged and is admissible as such. However, even if the statement is extrinsic act evidence, the government argues that it is admissible under Rule 404(b) because it is relevant to the issue of appellant's intent and its probative value substantially outweighs any prejudice resulting from its admission.

We reject the government's argument that appellant's statement is not extrinsic act evidence. " 'An act cannot be characterized as an extrinsic act when the evidence concerning that act and the evidence used to prove the crime charged are inextricably intertwined.' " *United States v. McDowell,* 705 F.2d 426, 429 (11th Cir. 1983) (quoting *United States v. Aleman,* 592 F.2d 881, 885 (5th Cir.1979)). When a witness' testimony regarding the crime charged would be incomplete and confusing without the testimony regarding the past act, then the evidence of the past act cannot be characterized as extrinsic to the crime. *See McDowell, supra,* at 429; *United States v. Costa,* 691 F.2d 1358, 1361 (11th Cir.1982). In this case, agent Matthews' testimony about appellant's involvement in the crime charged would have been completely comprehensible without the testimony regarding appellant's claimed flight to Colombia. The evidence regarding the flight was entirely unrelated to the transaction at issue here and constitutes extrinsic act evidence subject to Rule 404(b).

Federal Rule of Evidence 404(b) provides that:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

In *United States v. Beechum,* 582 F.2d 898 (5th Cir.) (en banc), *cert. denied,* 440 U.S. 920, 99 S.Ct. 1244, 59 L.Ed.2d 472 (1979),[1]

---

1. The Eleventh Circuit Court of Appeals has adopted the case law of the former Fifth Circuit handed down as of September 30, 1981, as its governing body of precedent, which is binding unless and until overruled or modified by this Court en banc. *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981) (en banc). Decisions rendered by the full en banc court of the former Fifth Circuit also are binding precedent for this Court. *Stein v. Reynolds Securities, Inc.,* 667 F.2d 33, 34 (11th Cir.1982).

the former Fifth Circuit interpreted Rule 404(b) to require a district court to undertake the following analysis:

First, it must determine that the extrinsic offense evidence is relevant to an issue other than defendant's character. Second, the evidence must possess probative value that is not substantially outweighed by the undue prejudice....

*Id.* at 911, *cited with approval in United States v. Edwards,* 696 F.2d 1277, 1280 (11th Cir.), *cert. denied,* —— U.S. ——, 103 S.Ct. 1884, 76 L.Ed.2d 813 (1983). The trial court is afforded broad discretion in determining the admissibility of extrinsic act evidence, and its decision will not be reversed absent an abuse of discretion. 696 F.2d at 1280. Moreover, error in the admission of extrinsic act evidence will not require reversal if appellant suffers no prejudice from the error. Fed.R.Crim.P. 52(a); *see United States v. Dothard,* 666 F.2d 498, 505 (11th Cir.1982); *United States v. Guerrero,* 650 F.2d 728, 736 (5th Cir.1981).

■ We conclude that the trial court in this case erred in admitting the extrinsic act evidence because it did not determine that the evidence was relevant to appellant's intent to commit the crimes charged here. Extrinsic act evidence is relevant to a defendant's intent to commit the crime charged only if the extrinsic act and the charged offense require the same intent.[2] *Guerrero, supra,* at 733; *Dothard, supra,* at 502–03. Because no evidence was offered

to elucidate the purpose of appellant's flight to Colombia, it cannot be determined that his intent in making the trip was the same as his intent in committing the offenses involved in this appeal, and, therefore, it cannot be determined that the extrinsic act evidence was relevant to the issue of appellant's intent. Failing this initial hurdle of the *Beechum* test, the evidence was inadmissible under Rule 404(b).

■ Although we find error in the admission of the evidence, we conclude that it is harmless because other substantial evidence supports appellant's conviction, and appellant suffered no prejudice by reason of the error. Direct evidence of his involvement in the negotiation and execution of the cocaine sale is sufficient to sustain the conviction without consideration of the extrinsic act evidence.

### III.

■ Appellant called as a witness co-defendant Lewington, who testified to his own participation in the drug transaction and denied any participation by appellant. At the time that he testified, Lewington had plead guilty to the charges against him, but he had not yet been sentenced. On cross-examination, the government sought to impeach Lewington's testimony with evidence of his guilty plea.[3] Appellant did not object[4] when the evidence was introduced.

---

**2.** As a predicate to the introduction of extrinsic act evidence, the government must prove that the defendant actually committed the extrinsic act. *United States v. Dothard,* 666 F.2d 498, 502 (11th Cir.1982). The government, however, needs to produce only enough evidence to present a jury question on the issue whether defendant committed the act. *Id.* Appellant's own statement, admitting that he committed the act, even if mere puffery, is sufficient to justify a jury finding that he committed the act. *United States v. Edwards,* 696 F.2d 1277, 1280 (11th Cir.), *cert. denied,* —— U.S. ——, 103 S.Ct. 1884, 76 L.Ed.2d 813 (1983).

**3.** In attempting to bring out the guilty plea, the government apparently inadvertently elicited from Lewington testimony about a thirty-year-old fraud conviction. This testimony would be inadmissible under Federal Rule of Evidence 609(b) without prior notice to the adverse party and a determination by the trial judge that the

probative value of the evidence substantially outweighed its prejudicial effect. Notice was not given, and a determination of prejudice was not made in this case. Admission of the evidence appears to have been unintended. An error of this kind, nevertheless, could prejudice a defendant. In this case, no objection was raised to admission of the evidence. We therefore must review the error under the plain error standard, which requires us to remedy an error only when failure to do so would affect the "fairness, integrity and public reputation of judicial proceedings." *United States v. Russell,* 703 F.2d 1243, 1249 (11th Cir.1983). We find no such error in this case where the prosecutor, after eliciting the challenged testimony, did not inquire into the conviction and never again mentioned it throughout the course of the trial.

**4.** During the trial of this case before the District Court, appellant was represented by Counsel other than the Counsel representing him on this appeal.

On appeal, he raises as error the introduction of the guilty plea.

 When the opponent of evidence fails to object to its admission and thus denies the trial court an opportunity to cure immediately any error created by the admission, the Court on appeal does not apply the usual abuse of discretion standard of review, *see United States v. Russell,* 703 F.2d 1243, 1249 (11th Cir.1983), but rather employs the plain error standard of Federal Rule of Criminal Procedure 52(b). *Id.* at 1248. "Plain error consists of error which, when examined in the context of the entire case, is so obvious that failure to notice it would seriously affect the fairness, integrity and public reputation of the judicial proceedings." *Id.* We do not find such error in this case.

 Appellant argues that this Court has left open the question whether a guilty plea, standing alone without a judgment of conviction and imposition of sentence, may be used to impeach a witness under Federal Rule of Evidence 609.[5] In support of his argument, appellant cites to dicta in *United States v. Klein,* 560 F.2d 1236 (5th Cir.1977), *cert. denied,* 434 U.S. 1073, 98 S.Ct. 1259, 55 L.Ed.2d 777 (1978), raising the question whether a defendant testifying in his own behalf may be impeached with his own guilty plea entered in another case in which he has not yet been sentenced. *Id.* at 1241. Appellant also argues that, even if a guilty plea standing alone is admissible for impeachment purposes, the court erred in admitting the plea in this case because the plea was used as substantive evidence of

the conspiracy for which appellant was charged.

In considering the question whether the guilty plea was erroneously admitted in this case because it was used as substantive evidence of defendant's guilt, we note that, when a co-defendant witness' guilty plea is introduced to impeach the witness, care must be taken to ensure that the evidence admitted is used only to impeach the credibility of the witness and not as substantive evidence against the defendant. *United States v. Edwards,* 716 F.2d 822, 825 (11th Cir.1983). This Circuit has articulated the factors to be considered in determining whether a co-defendant's guilty plea was properly admitted into evidence. *Id.* (citing *United States v. King,* 505 F.2d 602, 608 (5th Cir.1974)). Those factors include:

whether there was a proper purpose in introducing the fact of a guilty plea, whether the plea was improperly emphasized or used as substantive evidence of guilt, whether the introduction of the plea was invited by defense counsel, whether an objection was entered or an instruction requested, whether the defendant's failure to object to the testimony could have been the result of tactical considerations, and whether, in light of all the evidence, the failure to give an instruction was harmless beyond a reasonable doubt.

*Id.*

 We conclude that the plea evidence was not improperly used or unduly emphasized in this case. Appellant has not pointed us to any place in the record, and we have not found a place in which the government improperly attempted to use Lewing-

---

5. Rule 609 provides in relevant part:

 (a) General rule. For the purpose of attacking the credibility of a witness, evidence that he has been convicted of a crime shall be admitted if elicited from him or established by public record during cross-examination but only if the crime (1) was punishable by death or imprisonment in excess of one year under the law under which he was convicted, and the court determines that the probative value of admitting this evidence outweighs its prejudicial effect to the defendant, or (2) involved dishonesty or false statement, regardless of the punishment.

 (b) Time limit. Evidence of a conviction under this rule is not admissible if a period of

more than ten years has elapsed since the date of the conviction or of the release of the witness from the confinement imposed for that conviction, whichever is the later date, unless the court determines, in the interests of justice, that the probative value of the conviction supported by specific facts and circumstances substantially outweighs its prejudicial effect. However, evidence of a conviction more than 10 years old as calculated herein, is not admissible unless the proponent gives to the adverse party sufficient advance written notice of intent to use such evidence to provide the adverse party with a fair opportunity to contest the use of such evidence.

ton's plea to conspiracy charges as substantive evidence that appellant was guilty of conspiracy. The prosecutor on cross examination of Lewington asked him whether he had plead guilty to "that offense," referring to the "cocaine transaction that occurred on February 18th of this year." In closing argument, appellant's trial counsel himself raised the fact of Lewington's guilty plea. Moreover, although appellant seeks to advance his argument that the plea was improperly used by pointing to the prosecutor's closing statement, which reminded the jury that appellant was charged with conspiracy along with Lewington (a fact that was evident from the indictment), appellant's own counsel in his closing argument also discussed "Lewington's conspiracy" in denying that appellant himself was a part of it.

Additionally, appellant did not object to introduction of the evidence, nor did he request jury instructions, and his failure to do so could reflect his own tactical calculations. Indeed, appellant himself capitalized on the introduction of the guilty plea. He used the evidence to argue that the jury should believe Lewington's testimony (that appellant did not participate in the drug transaction) because Lewington would be unlikely to lie under oath before the very judge who he knew would later sentence him. Appellant called Lewington to the stand to testify to his own participation in the drug transaction. Evidence that Lewington also plead guilty to charges based on that transaction supports his testimony.

However this Court might decide the question purportedly left open in *Klein* and however we might decide the question whether the rule applicable to a defendant's testifying in his own behalf extends to a co-defendant witness' testimony,[6] we would deny appellant relief in this case because, even if introduction of the guilty plea was

error, for the reasons set out above it did not seriously affect the fairness, integrity and public reputation of the judicial proceedings.

## IV.

■ Appellant challenges the sufficiency of Count V of the indictment, which charged him with knowingly and unlawfully using a firearm during the commission of a federal felony. Appellant maintains that the indictment did not give sufficient notice of the charges against him to permit preparation of an adequate defense. The alleged inadequacy stems from the discrepancy between the language of the indictment ("use a firearm ... *during* the commission of a felony") (emphasis added) and the language of the statute on which the charge is based ("uses a firearm *to commit* any felony"), 18 U.S.C.A. § 924(c)(1) (emphasis added). We find no merit in appellant's argument.

The Sixth Amendment guarantees every defendant the right to be informed of the government's accusation against him. *Russell v. United States,* 369 U.S. 749, 761, 82 S.Ct. 1038, 1045, 8 L.Ed.2d 240 (1962); *United States v. Ramos,* 666 F.2d 469, 474 (11th Cir.1982). An indictment is sufficient to protect this right if it

> "first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense."

*Id.* (quoting *Hamling v. United States,* 418 U.S. 87, 117, 94 S.Ct. 2887, 2907, 41 L.Ed.2d 590 (1974)).

Appellant in this case failed to raise objection to the indictment until this appeal.[7] We therefore must find the indictment suf-

---

**6.** The government points to numerous cases involving the impeachment of co-defendant witnesses in which this Court has approved the use of guilty pleas, without explicitly limiting their use to situations in which the witness already has been sentenced. *See, e.g., United States v. Edwards,* 716 F.2d 822 (11th Cir. 1983); *United States v. Jimenez-Diaz,* 659 F.2d 562 (5th Cir.1981), *cert. denied sub nom. Sala-*

zar *v. United States,* 456 U.S. 907, 102 S.Ct. 1754, 72 L.Ed.2d 164 (1982); *United States v. King,* 505 F.2d 602 (5th Cir.1974).

**7.** We note that appellant, if he thought that the indictment was insufficient, could have moved for a bill of particulars. *See United States v. Cox,* 664 F.2d 257, 259 (11th Cir.1981).

ficient "unless it is so defective that it does not, by any reasonable construction, charge an offense for which the defendant is convicted." *United States v. Trollinger,* 415 F.2d 527, 528 (5th Cir.1969) (per curiam), *cited with approval in United States v. Lerma,* 657 F.2d 786, 790 (5th Cir.1981), *cert. denied,* 455 U.S. 921, 102 S.Ct. 1279, 71 L.Ed.2d 463 (1982).

 To inform the defendant of all elements of the offense charged, the indictment need not track the statutory language. *See United States v. Gordon,* 638 F.2d 886, 889 (5th Cir.), *cert. denied,* 452 U.S. 909, 101 S.Ct. 3038, 69 L.Ed.2d 411 (1981). Moreover, when the indictment specifically refers to the statute on which the charge was based, the statutory language may be used to determine whether the defendant received adequate notice. *See United States v. Varkonyi,* 645 F.2d 453, 456 (5th Cir.1981); *Trollinger, supra,* at 528.

Count V of the indictment charged a violation of 18 U.S.C.A. § 924(c)(1), which permits imposition of an enhanced sentence when an individual "uses a firearm to commit any felony for which he may be prosecuted in a court of the United States." The indictment charged that

[o]n or about February 18, 1981, at Miami, Dade County, in the Southern District of Florida, the defendant, ROBERT D. CHILCOTE, did knowingly and unlawfully use a firearm, that is, a hand gun, during the commission of a felony, for which he may be prosecuted in a Court of the United States, that is, knowingly and intentionally possessing with intent to distribute and distribution of a quantity of a narcotic controlled substance as charged in Counts II and III; in violation of Title 18, United States Code, Section 924(c)(1).

The language of Count V provides notice of every element of the crime charged. Any slight variation between the language of the indictment and the statute itself is cured by the indictment's reference to the statute. As this Court has repeatedly stated, practical, rather than technical, considerations govern the validity of an indictment. Minor deficiencies that do not

prejudice the defendant will not prompt this Court to reverse a conviction. *United States v. Cox,* 664 F.2d 257, 258 (11th Cir. 1981); *Varkonyi, supra,* at 456; *Gordon, supra,* at 889.

Appellant argues that if he had properly understood the charge against him, he could have defended on the ground that he did not use the firearm to commit the felonies charged, even if he used it during the commission of a felony. We find this argument unconvincing. Viewing the evidence in the light most favorable to the government, as we must do in this appeal, *United States v. Bell,* 678 F.2d 547, 549 (5th Cir.1982) (Unit B en banc), *aff'd,* —— U.S. ——, 103 S.Ct. 2398, 76 L.Ed.2d 638 (1983), it is clear that appellant used the firearm before the completion of the felony; he used it after the drug deal was struck, but before cocaine or money changed hands. Thus, the jury could have reasonably concluded that appellant used the gun to commit the felony of distribution of a controlled substance.

### V.

Appellant's sufficiency of the evidence challenge is without merit.

AFFIRMED.